UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| KENNETH E. ROBINSON, JR., | Civil Action No. 12-2981 |
| Plaintiff, | |
| v. | |
| | OPINION |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, et al., | |
| Defendants. | |

ARLEO, UNITED STATED DISTRICT JUDGE

I. INTRODUCTION

Plaintiff, a short term employee of defendant Horizon Blue Cross-Blue Shield of New Jersey ("Horizon"), filed this action claiming gender (male) and race (African American) discrimination against Horizon and his supervisors. Defendants claim that they terminated Plaintiff because of ongoing performance issues and repeated unprofessional interactions with co-workers and others. Because Plaintiff cannot demonstrate that the reason given for his termination were pretextual, he cannot meet his burden under the McDonnell Douglas framework. Accordingly Defendants' motion for summary judgment is **GRANTED**.[1]

II. FACTUAL BACKGROUND[2]

---

[1] In addition, Plaintiff has sought leave to file a sur-reply in further opposition to Defendants' motion for summary judgment. See Dkt. No. 129. The Court has considered this submission in its analysis, but still concludes that Plaintiff has failed to raise any disputed issues of material fact that would preclude summary judgment.

[2] After Defendants moved for summary judgment, Plaintiff filed a motion to preclude summary judgment pursuant to Rule 56(d), in which Plaintiff argued that he could not present or rebut facts essential to justify its opposition. See Dkt. No. 122. Some of the discovery

Plaintiff,[3] an African-American male, was hired by Horizon on August 2, 2010 after working there as an independent contractor. Plaintiff, who graduated from law school but is not licensed to practice in this jurisdiction, represents himself *pro se*. Def. Statement ¶¶ 6-8.

At Horizon, Plaintiff's title was Vendor Outsourcing Specialist. Id. ¶ 8. In this role, Plaintiff was required to manage the relationship between Horizon and its IT service vendors. Krause Cert., Ex. 8. Ms. White, an African-American female, hired Plaintiff and initially supervised him. Id. ¶ 2. After a departmental reorganization in 2011, Ms. Concannon, a Caucasian female, became Plaintiff's supervisor. Id. ¶ 3; White Decl. ¶ 8.

While at Horizon, Plaintiff was involved in a number of disputes with other Horizon employees and third parties. See Def. Statement ¶¶ 11-15; see, e.g., Krause Cert., Ex. 9. Robinson Dep. at 75:19-77:6, 171:1-3.[4] A number of these incidents involved Plaintiff and members of the Sourcing Department, including Deborah Collins, Doug Rasmussen, Susan Berkenbush, and Ms. Meza. Def. Statement ¶ 6. In one incident, on November 9, 2010, Plaintiff had a verbal altercation with Ms. Meza. See Def. Statement ¶ 12. According to Plaintiff, although Ms. Meza yelled at him and he did not raise his voice, Ms. Meza nonetheless complained to her supervisors about the incident. Id. ¶ 12. While Plaintiff did not

---

referenced in his motion was sought during the discovery period but denied by the Magistrate Judge, whose order was affirmed by the District Court. Other discovery was allowed but not pursued by Plaintiff during discovery. See Dkt. No. 123-1, Ex. D. Therefore, and for the reasons set forth herein, Plaintiff's motion is denied.

[4] The exhibits Plaintiff submitted in opposition to Defendants' motion further evince his unprofessional communications with coworkers, see, e.g., D051839, D003409, D031246, and vendors, see, e.g., D034356-57, D0542465, D009822, D009969, D038331, D034356. See also Robinson Dep. at 77:16-18, 79:13-17 (Plaintiff admitting he has no basis to believe that a third-party vendor's complaints about Plaintiff were motivated by any racial animus or gender bias). While Plaintiff, in his sur-reply, attaches emails between himself and other vendors that demonstrate a healthy working relationship, the fact that Plaintiff was able to get along with some vendors on some occasions does not contradict the fact that Plaintiff did, on numerous occasions, demonstrate unprofessionalism in his communications.

contemporaneously claim that Ms. Meza acted with any racial animus, he now claims that "she was feeding into the stereotype of the angry black man." Robinson Dep. at 168:22-169:13. As a result of Ms. Meza's complaints, Plaintiff was directed to leave work on Ms. Berkenbush's desk instead of giving it to the Sourcing Department contract specialists. Def. Statement ¶ 12.

Human Resources often became involved when these issues occurred. For example, in Summer 2011, Ms. Wright-Gibson met with Plaintiff after Plaintiff asked Susan Berkenbush, the Director supervising the Contract Specialists with whom Plaintiff was fighting, "how would you feel if I played the race card?" Pl. Statement of Facts, Ex. 6 at D005418. Plaintiff then met with Ms. Wright-Gibson, an African-American woman who works in Horizon's HR department. Wright-Gibson Decl. ¶¶ 1-4; Def. Statement ¶ 4. During this meeting, Plaintiff told Ms. Wright-Gibson he had not experienced any racism while employed at Horizon and made no mention of gender discrimination. Wright-Gibson Decl. ¶ 4.

Plaintiff admits to performance deficiencies during his short employment with Horizon. For example, Plaintiff failed to properly institute version control for draft contracts. Robinson Dep. at 178:22-180:18, 269:1-4.[5] Additionally, Plaintiff often exceeded his responsibilities. Id. at 183:4-8, 269:5-270:1. This led to tension and further hostility between Plaintiff and his co-workers. Id.; Def. Statement ¶ 11, 13, 14. While Plaintiff's 2010 Annual Review was average, Plaintiff's Mid-Year 2011 Review reflected Plaintiff's technical errors and conflicts with employees and vendors. Def. Statement ¶ 16; Krause Cert., Ex. 15.

During Plaintiff's employment, several of his requests to work from home were denied. Horizon's telecommuting policy allowed employees who had worked at Horizon for at least six months and whose performance exceeded expectations to be considered, on a case-by-case basis,

---

[5] Again, exhibits Plaintiff submitted in opposition confirm his performance deficiencies. See, e.g., D035432-33.

3

to work remotely. Def. Statement ¶ 17. Plaintiff first requested to work from home several days a week when Ms. White was still his supervisor. Id. ¶ 18. This request was denied, but Ms. White permitted Plaintiff to work from home on several occasions. Id. Shortly after Ms. Concannon became Plaintiff's supervisor, Plaintiff again contacted Ms. White to renew his request to work from home. Id. ¶ 22. Ms. White forwarded the request to Ms. Concannon for her input. Id. After not receiving a response during the business day, Plaintiff emailed Ms. Concannon directly. Id. The following day at 8:31 a.m., Ms. White responded, stating that Ms. Concannon had yet to make a decision, but would likely deny the request until Ms. Concannon's transition had "settle[d] down." Krause Cert., Ex. 18. Plaintiff responded eight minutes later, stating that he was seeking "a reasonable timeframe" for Ms. Concannon's decision. Id. At 8:50 a.m., Ms. White responded, again asking Plaintiff to provide time for Ms. Concannon respond to the request. Id. Four minutes later, Plaintiff emailed Ms. White and Ms. Concannon, demanding a meeting with Ms. Concannon. Id. Ms. White responded, yet again requesting that Plaintiff be patient and reminding him that Ms. Concannon and the IT department were still undergoing a transition. Id.

On October 5, 2011, Ms. Concannon denied Plaintiff's request based upon his unfavorable 2011 Mid-Year Review, which Ms. White had prepared, and Ms. Concannon's recent transition to her new position. Krause Cert., Ex. 19; Concannon Dep. 22:22-23; Concannon Decl. ¶ 3.[6]

---

[6] Plaintiff points out that another employee in the department, Parvin Behdashti, was allowed to work from home. The evidence demonstrates, however, that this alternative work arrangement was made before Ms. Concannon took over the department. See Concannon Dep. at 29:11-14. Additionally, Plaintiff's assertions that he was treated differently than Ms. Behdashti are contradicted by Ms. Behdashti's excellent performance evaluations. See Krause Reply Cert., Exs. 1-2.

4

On December 8, 2011, Plaintiff was placed on Written Performance Counseling by Ms. Concannon, in consultation with Ms. White and Human Resources. See Krause Cert., Ex. 20; Concannon Dep. at 34:17-20. Ms. Concannon based her decision on Plaintiff's failure to demonstrate improvement with the accountability and communication issues identified in his Mid-Year Review. Krause Cert., Ex. 20. The Written Performance Counseling provided four examples of Plaintiff's performance issues and mandated that he immediately take ownership of his actions and ensure that all communications be professional and comprehensive. Id.

On December 13, 2011, Plaintiff wrote a five-page rebuttal to Ms. Concannon. See Krause Cert., Ex. 22. In this document, Plaintiff invoked procedural due process and the United States Constitution. Id. It also contained a prayer for relief. Id. Human Resources investigated Plaintiff's rebuttal, but found that Plaintiff's placement on Written Performance Counseling was appropriate. Wright-Gibson Decl. ¶ 5.

In mid-December, Plaintiff received his 2011 Annual Review, which was prepared by Ms. White. Def. Statement ¶ 29. Again, Plaintiff received a number of unfavorable reviews. Id. Plaintiff asserts that his negative review was a result of his complaints to Human Resources about being placed on Written Performance Counseling. Id. Shortly thereafter, on December 22, 2011, Plaintiff again complained to Human Resources, this time alleging gender discrimination. Krause Cert., Ex. 24. Plaintiff did not assert any allegations of racial discrimination at that time. Id.

Also on December 22, 2011, Ms. Concannon directed Plaintiff to begin preparing weekly status reports, which they would review the following week. Krause Cert., Ex. 25. Plaintiff again went to Human Resources, questioning whether this requirement was consistent with being placed on Written Performance Counseling. Krause Cert., Ex. 26. On the same day he spoke

5

with Human Resources, Plaintiff sent an email to Ms. White, stating, "I pray I live long enough to show my excellent backhand." Id. Plaintiff claims this was not a physical threat, but instead a reference to a number of tennis conversations Plaintiff had with Ms. White. Def. Statement ¶ 35. When Ms. White forwarded this message to Ms. Concannon, however, Ms. White stated that she "can only guess what he means by this." Krause Cert., Ex. 26. Ms. Conncanon was uncomfortable with Plaintiff's email and forwarded it to Human Resources. Id.

On January 4, 2012, Plaintiff sent a "Complaint for Adverse Treatment / Disparate Treatment . . . Hostile Work Environment / Retaliation" to Human Resources. See Krause Cert., Ex. 27. In the document, Plaintiff claimed Ms. Concannon's December 22, 2011, directive was discriminatory and/or retaliation for Plaintiff's prior complaints to Human Resources. Id. Plaintiff claimed he was being improperly "portrayed as an angry (Black) man" and was subject to gender discrimination. Id. Later that month, Plaintiff met with Santo Barravecchio, another Human Resources employee. Def. Statement. ¶ 39. Plaintiff felt Mr. Barravecchio was "friendly, he was being receptive, nonjudgmental, non-accusatory . . . he was trying to resolve a problem . . . ." Robinson Dep. at 265:6-12. Plaintiff left the meeting "feeling better leaving than entering." Id. at 265:24.

Throughout January and February 2012, Plaintiff continued to meet with Ms. Concannon for performance counseling. Plaintiff challenged Ms. Concannon's criticisms, believed Ms. Concannon was unfit to judge his work, and continued to assert that he had no communication problems. Robinson Dep. at 266:16-268:3. During this time, Plaintiff continued to make additional allegations of unfair treatment, which Human Resources investigated and found to be meritless. Wright-Gibson Decl. ¶ 6.

On February 15, 2011, Plaintiff filed a charge (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") alleging race and gender discrimination beginning on December 8, 2011, the date he received his Written Performance Counseling. Def. Statement ¶ 43. Plaintiff has never amended the Charge nor filed a new charge. Id.

On March 9, 2012, Horizon terminated Plaintiff's employment. Def. Statement ¶ 42. This decision was made by Ms. Concannon, in consultation with Ms. Wright-Gibson. Id. Defendants assert this decision was based upon Plaintiff's performance/communications issues and his failure to take ownership of his behaviors. Id.

### III. STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(c), a motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). All facts and inferences must be construed in the light most favorable to the non-moving party. Peters v. Del. River Port Auth., 16 F.3d 1346, 1349 (3d Cir. 1994).

### IV. ANALYSIS

#### a. Discrimination

Plaintiff's Title VII and New Jersey Law Against Discrimination ("NJLAD") discrimination claims are both governed by the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Smith v. Twp. of E. Greenwich,

519 F. Supp. 2d 493, 506 (D.N.J. 2007), aff'd, 344 F. App'x 740 (3d Cir. 2009). Under this framework the plaintiff must first prove by a preponderance of the evidence a *prima facie* case. McDonnell Douglas, 411 U.S. at 802–03. Once the plaintiff carries his burden, the burden shifts to the defendant to articulate some legitimate non-discriminatory reason for the adverse employment action. Id. Finally, if the employer carries its burden, the burden shifts back to the employee to show that the defendant's stated reasons are mere pretext and not worthy of credence. Id.

For a discrimination/disparate treatment claim, a plaintiff establishes a *prima facie* case by demonstrating: "he/she (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the adverse employment action was made under circumstances that give rise to an inference of unlawful discrimination." Rodriguez v. Nat'l R.R. Passenger Corp., 532 F. App'x 152, 153 (3d Cir. 2013). Defendants do not dispute that Plaintiff was a member of protected classes (male and African-American)[7] or that Plaintiff was qualified for the position.

---

[7] Here, while Plaintiff's claim is for reverse gender discrimination, such theory of liability under Title VII is actionable. Besko v. New Jersey Juvenile Justice Comm'n, 558 F. App'x 295, 298 (3d Cir. 2014) ("In Iadimarco v. Runyon, 190 F.3d 151 (3d Cir. 1999), we clarified, in the context of a reverse discrimination claim, that 'all that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII.'"). While reverse gender discrimination is also a viable theory under NJLAD, a male plaintiff must, in addition to the typical *prima facie* elements, "must substantiate that the background circumstances support the suspicion that the defendant is the unusual employer who discriminates against the majority in order to meet the first element of his prima facie case." Treusch v. Ctr. Square Supermarket, LLC, 921 F. Supp. 2d 336, 350 (D.N.J. 2013) reconsideration denied, No. 11-4874, 2013 WL 1405031 (D.N.J. Apr. 5, 2013). Here, Defendants do not offer any challenges directed at the reverse-discrimination burden and therefore the Court assumes for the purposes of the motion that Plaintiff has demonstrated that Horizon is such an unusual employer.

Defendants argue that a number of the employment decisions at issue do not constitute actionable "adverse employment actions." For purposes of a disparate treatment claim, "[a]n adverse employment action is one which is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001) (quotation and citation omitted). The Court agrees with Defendants that the denial of Plaintiff's request to work from home is not an adverse employment action. See Seldon v. Nat'l R.R. Passenger Corp., No. 05-4165, 2007 WL 3119976, at *3 (E.D. Pa. Oct. 24, 2007) ("The United States Court of Appeals for the Third Circuit has not addressed the precise question of whether denial of 'work-from-home' status is an adverse employment action, but district courts in other jurisdictions have consistently held that it is not."). The Court also agrees that Plaintiff's placement on Written Performance Counseling and his poor performance reviews do not constitute adverse employment actions. See Reynolds v. Dep't of Army, 439 F. App'x 150, 153 (3d Cir. 2011) ("We note that a likely consequence of allowing suits to proceed on the basis of a [performance improvement plan] would be more naked claims of discrimination and greater frustration for employers seeking to improve employees' performance."); El-Sioufi v. St. Peter's Univ. Hosp., 382 N.J. Super. 145, 176 (App. Div. 2005) ("[A] negative employment evaluation, unaccompanied by a tangible detriment, such as a salary reduction or job transfer, is insufficient to rise to the level of an adverse employment action."). Plaintiff does claim, however, that he was terminated, which is an adverse employment action. Thus, Plaintiff's termination satisfies prong three of his *prima facie* showing.[8]

---

[8] Because Plaintiff did not file a charge of discrimination with the EEOC regarding his termination, Plaintiff's Title VII claim for unlawful termination must be dismissed for failing to exhaust his administrative remedies. See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-15 (2002). As noted below, however, even if Plaintiff could pursue his Title VII claim on a "continuing violation theory," Plaintiff's Title VII claim substantively fails at step three.

9

Defendants also argue that Plaintiff has failed to make a *prima facie* showing because he has not shown that any adverse employment action was made under circumstances giving rise to an inference of discrimination. The Court need not reach these arguments, however, because even if Plaintiff met his *prima facie* burden, summary judgment must be granted for Defendants as Plaintiff has failed to carry his burden at step three of the McDonnell Douglas analysis.

When an employer articulates a legitimate, non-discriminatory basis for termination, a plaintiff must then demonstrate that this reason is mere pretext. See Hancox v. Lockheed Martin Tech. Servs., No. 04-6104, 2007 WL 1796248, at *7 (D.N.J. June 21, 2007). "Pretext cannot be established based on speculation and mere conclusory allegations." Jordan v. Allgroup Wheaton, 218 F. Supp. 2d 643, 651 (D.N.J. 2002), aff'd sub nom., 95 F. App'x 462 (3d Cir. 2004). "To make a showing of pretext, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Burton v. Teleflex Inc., 707 F.3d 417, 430 (3d Cir. 2013) (citation and quotation omitted). "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." Id.

Here, Defendants have set forth a legitimate, nondiscriminatory reason for all of the employment actions about which Plaintiff complains. Specifically, Defendants assert, and have provided documents evidencing, that: (1) Plaintiff's requests to work from home were initially denied because of his performance issues and the short duration of his employment and were

later denied because of Plaintiff's performance and Ms. Concannon's desire to not make any employment decisions until she had settled-in to her new role; (2) Plaintiff's performance reviews and placement on Written Performance Counseling reflect Plaintiff's self-admitted technical performance issues and his frequent unprofessional interactions with other Horizon employees and third-party vendors; and (3) Plaintiff's termination resulted from Plaintiff's continuing job performance issues. See Casseus v. Elizabeth Gen. Med. Ctr., 287 N.J. Super. 396, 405 (App. Div. 1996). Thus, the burden shifts to Plaintiff to establish this justification is pretextual.

In response, Plaintiff offers only his own subjective beliefs and speculations, which are insufficient to defeat summary judgment. Plaintiff admits to his technical errors in completing his contract reviews and the record is replete with examples of Plaintiff's lack of professionalism when communicating with other Horizon employees and third-party vendors. In fact, the emails Plaintiff relies upon in his opposition only further demonstrate that Plaintiff's unsatisfactory reviews, placement on Written Performance Counseling, and termination were not pretextual. While Plaintiff argues that his job performance should be viewed as satisfactory based upon other considerations, such as productivity, "pretext turns on the qualifications and criteria identified by the employer, not the categories the plaintiff considers important." Amato v. Verint Sys., Inc., No. 04-3489, 2007 WL 604804, at *5 (D.N.J. Feb. 16, 2007) (quoting Simpson v. Kay Jewelers, 142 F.3d 639, 642 (3d Cir. 1998)). Additionally, Plaintiff's claim that other coworkers were treated differently fails because Plaintiff has failed to demonstrate that the circumstances of these allegedly disparate treatments are comparable. For example, Plaintiff has not demonstrated that any other employees were not terminated after committing the same errors in version control or being involved in multiple instances of hostile communication. See Jordan, 218 F. Supp. 2d at

652 ("However, because there is no evidence in the record that any of the individuals involved in these workplace disputes had a disciplinary record comparable to his own, this anecdotal evidence that past quarrels between white employees resulted in less severe punishment for those involved fails to support an inference of intentional racial discrimination.").[9] Similarly, while Plaintiff argues that another contract specialist, Douglas Rasmussen, was not disciplined for sending an unprofessional email, Plaintiff does not know if anyone complained about the message or if the issue had otherwise been raised to a supervisor. See Def. Statement ¶ 38.

As Plaintiff has offered no evidence to support his claim of race and gender discrimination and that Defendants' justifications are mere pretext, summary judgment must be granted for Defendants. Jordan, 218 F. Supp. 2d at 651; see also Parikh v. United Parcel Serv., Inc., No. 09-1652, 2011 WL 5193104, at *5 (D.N.J. Oct. 31, 2011), aff'd sub nom., 491 F. App'x 303 (3d Cir. 2012); Habib v. Urban Outfitters, Inc., No. 03-1561, 2004 WL 765119, at *7 (E.D. Pa. Apr. 1, 2004).

### b. Retaliation

Again, the McDonnell Douglas framework governs the Court's analysis. To make a *prima facie* case of retaliation, a plaintiff must demonstrate: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). Here, although it is not clear from the Second Amended Complaint or his papers filed in

---

[9] Similarly, Plaintiff's assertions that he was treated differently than Parvin Behdashti are contradicted by Ms. Behdashti's excellent performance evaluations. See Krause Reply Cert., Exs. 1-2. Additionally, even if Ms. Behdashti was treated differently because Ms. Concannon had hired her, this is not an actionable basis for a discrimination claim. See Parks v. Rumsfeld, 119 F. App'x 382, 385 (3d Cir. 2005).

opposition to summary judgment, plaintiff seems to claim that he was "retaliated against" for: (1) complaining to Human Resources in December 2011; (2) for requesting to work from home; and (3) filing his EEOC complaint. See Am. Compl. ¶ 86; Pl. Opp'n Br. at 5-6, 16. Assuming that such actions constitute protected employee activities[10] and are causally related to actionable adverse actions,[11] the Court concludes that summary judgment must be granted for Defendants as Plaintiff has failed to rebut Defendants' legitimate, non-discriminatory justifications for the employment actions taken. See Section III.A supra.

### c. Hostile Work Environment

"To establish a hostile work environment claim against an employer, a plaintiff must prove the following: (1) the employee suffered intentional discrimination because of their sex [or race]; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex [or race] in that position; and (5) the existence of *respondeat superior* liability." Huston v. Procter & Gamble Paper Products Corp., 568 F.3d 100, 104 (3d Cir. 2009); Sgro v. Bloomberg L.P., 331 F. App'x 932, 941 (3d Cir. 2009) ("New Jersey courts treat hostile work environment claims under the NJLAD the same as the Supreme Court treats hostile work environment actions under Title VII."). "To assess whether a work environment is hostile, courts assess factors which include 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Bull v. Target Corp., No. 14-

---

[10] Any actions taken by decisionmakers before they were aware that Plaintiff engaged in the protected activity are not actionable. See Sanchez v. Sunguard Availability Servs., 362 F. App'x 283, 287-88 (3d Cir. 2010).

[11] The standard for "adverse employment action" is lower in the context of retaliation claims. McKinnon v. Gonzales, 642 F. Supp. 2d 410, 426 (D.N.J. 2009). The Court assumes that all of the employment decisions of which Plaintiff complains satisfies this standard.

6838, 2015 WL 1266792, at *3 (D.N.J. Mar. 17, 2015) (quoting Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)).

"Under the first prong, a plaintiff must show that her protected characteristic was a 'substantial factor' in harassment, and that but for that protected characteristic, 'she would not have been treated in the same manner.'" Palma v. Volunteers of Am., No. 04-919, 2006 WL 328352, at *6 (E.D. Pa. Feb. 9, 2006) (quoting Aman v. Cort Furniture Rental Corp., 85 F.3d 1074, 1081 (3d Cir. 1996)). Here, Plaintiff has failed to make such a showing. While many of these emails Plaintiff attaches to his opposition demonstrate other coworkers' frustration and resentment, none of these emails reference Plaintiff's race or gender, imply any bias, or suggest a discriminatory motive. Instead, record shows that the only individual who referenced Plaintiff's gender and race during Plaintiff's employment was Plaintiff. Plaintiff's other vague allegations about the way female employees bonded together, statements made by Ms. White, the screaming incident between Plaintiff and Ms. Meza, insufficient acknowledgment of Plaintiff's accomplishments, and his weekly counseling sessions do not suggest any harassment Plaintiff suffered was motivated by Plaintiff's race or gender.

Even assuming the interactions upon which Plaintiff bases his claims were motivated by Plaintiff's race or gender, the Court finds that they were not sufficiently severe and pervasive to establish a *prima facie* hostile work environment. "To be actionable, alleged harassment must be both subjectively and objectively detrimental and severe or pervasive." Palma v. Volunteers of Am., No. 04-919, 2006 WL 328352, at *7 (E.D. Pa. Feb. 9, 2006). "This analysis is based upon the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. Here, none of the

statements at issue were severe, were physically threatening or truly humiliating, or interfered with Plaintiff's work performance. Furthermore, many of the allegedly objectionable statements cannot serve as a basis for a hostile work environment claim because they were contained in private emails between other coworkers that Plaintiff only became aware of through discovery. Toth v. Cal. Univ. of Penn., 844 F. Supp. 2d 611, 634 n.8 (W.D. Pa. 2012); see also Hurley v. Atl. City Pol. Dept., 174 F.3d 95, 116 (3d Cir. 1999). As to the handful of potentially actionable comments upon which Plaintiff bases his claim, they are too infrequent to constitute a hostile work environment. See Carver v. City of Trenton, 420 F.3d 243, 263 (3d Cir. 2005); Hargrave v. County of Atlantic, 262 F. Supp. 2d 393, 413 (D.N.J. 2003). Thus, the Court finds that, under the totality of the circumstances, Plaintiff has failed to raise a triable claim of hostile work environment. Summary judgment is granted for Defendants.

### d. Individual Liability

To the extent Plaintiff seeks to bring claims against individuals under Title VII, summary judgment is granted for Defendants because individuals cannot be held individually liable under that Act. Jones v. Jersey City Med. Ctr., 20 F. Supp. 2d 770, 772 (D.N.J. 1998). Plaintiff's NJLAD claims for individual liability fail because Plaintiff's primary claims against Horizon fail. Murray v. Beverage Distrib. Ctr., Inc., 757 F. Supp. 2d 480, 488 (D.N.J. 2010); Haddix v. Camden Cnty. Youth Det. Ctr., No. 13-1594, 2015 WL 3755023, at *6 (D.N.J. June 16, 2015).

### e. Plaintiff's Remaining Claims

Plaintiff has also brought common law claims for negligent supervision, breach of the covenant of good faith and fair dealing, intentional infliction of emotional distress, fraud, deceit, breach of fiduciary duty, and negligent training. These claims are preempted. See Bull v. Target Corp., No. 14-6838, 2015 WL 1266792, at *3 (D.N.J. Mar. 17, 2015) ("The New Jersey

Appellate Division has held that the New Jersey State Legislature intended for the NJLAD to 'encompass all those claims and damages previously available at common law.'") (quoting Dale v. Boy Scouts of Am., 308 N.J. Super. 516, 543 (App. Div. 1998), aff'd, 160 N.J. 562, 734 (1999), rev'd on other grounds, 530 U.S. 640 (2000)); Kuilan v. Sodexo Inc., No. 11-4567, 2012 WL 1964492, at *8 (D.N.J. May 31, 2012); Toscano v. Borough of Lavallette, No. 04-4412, 2006 WL 1867197, at *9 (D.N.J. June 30, 2006); DiMare v. Metlife Ins. Co., No. 07-4268, 2008 WL 2276007, at *3 (D.N.J. June 2, 2008), aff'd, 369 F. App'x 324 (3d Cir. 2010). Therefore, summary judgment is granted for Defendants on these claims.

V. CONCLUSION

Plaintiff's Rule 56(d) motion is denied. Defendants' motion for summary judgment is granted on all counts. This matter is therefore dismissed and the case is closed. An appropriate order shall issue.

/s Madeline Cox Arleo<br>
**Hon. Madeline Cox Arleo**<br>
**United States District Judge**